IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| **Brent Nix**, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>**The Chemours Company FC, LLC**, et al.<br><br>        Defendants. | No. 7:17-CV-00189-D |
| **Roger Morton**, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>**The Chemours Company**, et al.<br><br>        Defendants. | No. 7:17-CV-00197-D |
| **Victoria Carey**, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>**E.I. Du Pont De Nemours and Company**, et al.<br><br>        Defendants. | No. 7:17-CV-00201-D |

**Order on Motion to Compel**

Before the court is Plaintiffs' request for an order compelling Defendants to supplement their responses to various written discovery requests. After reviewing the parties' filings and holding a hearing, the court will grant the motion in part as discussed below.

I.  Discussion

The Federal Rules allow parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The Rules provide several tools, including interrogatories and requests for production, to obtain discovery from other parties. *Id.* 33, 34.

The Rules also allow a requesting party to move to compel supplemental responses if the existing responses are incomplete or inadequate. Fed. R. Civ. P. 37(a). The party resisting or objecting to discovery "bears the burden of showing why [the motion to compel] should not be granted." *Mainstreet Collection, Inc.* v. *Kirkland's, Inc.*, 270 F.R.D. 238, 241 (E.D.N.C. 2010). To meet this burden, the non-moving party "must make a particularized showing of why discovery should be denied, and conclusory or generalized statements fail to satisfy this burden as a matter of law." *Id.*

   A.  **Documents from Chemours' Board of Directors, Executive Committee, and Audit Committee**

About a dozen of Plaintiffs' requests seek meeting agendas, meeting minutes, and other documents relating to discussions about Fayetteville Works and PFAS from Chemours' Board of Directors, its Executive Committee, and its Audit Committee.[1] The requests seek these documents

---

[1] Plaintiffs' supporting brief focuses solely on Chemours. While similar requests were made of EIDP, Plaintiffs apparently believe the discoverability of those materials will turn on the resolution of a discovery motion pending in a related case. Mem. in Supp. at 7 n.5, D.E. 459. Thus the court's opinion does not address those requests.

2

from July 1, 2015, to the present. They contend that Defendants have improperly limited the temporal scope of their responses and failed to produce all responsive documents.

The court begins its analysis with Chemours' decision to limit its search for responsive documents to the period between 2015 and August 2020. Chemours claims that it appropriately limited its search because information beyond that period is irrelevant to the claims and defenses here. It argues that by that time, "any contamination of the environment's largely been abated[,]" it had entered a consent order with the North Carolina Division of Environmental Quality, and the public knew about "[w]hat Chemours is doing at the Fayetteville works facility." Hr'g. Tr. at 29:10–14. It also maintains that information outside that period is irrelevant to Plaintiffs' gross negligence argument since there's no suggestion its actions taken after August 2020 caused any harm.

In response, Plaintiffs argue that the court should require Chemours to produce documents until the present day since discovery was bifurcated and merits discovery only began in January 2024. *Id.* at 34:4–18. So, the argument goes, Chemours' "decision to cut off . . . discovery . . . almost four years before the start of merits discovery, is unreasonable, particularly because it was Defendants, not Plaintiffs, that sought that bifurcated format." *Id.* at 34:11–14.

The court finds it difficult to understand why the date fact discovery began is relevant to the appropriate temporal scope of discovery. Regardless of whether discovery began shortly after the complaint was filed or years later, the scope of discovery remains the same: discovery must be relevant to the claims and defenses and proportional to the needs of the case. See Fed. R. Civ. P.

26(b). Thus, the court finds Chemours' argument to be the more persuasive and finds that it appropriately limited its search for these requests to the period between 2015 and August 2020.[2]

Plaintiffs also claim that Chemours failed to produce all responsive documents. They point out that Paul Kirsh, the former president of Chemours' fluoroproducts division, submitted an affidavit discussing a presentation he made to the company's board of directors in April 2017 about issues relevant to this lawsuit. And they note that Chemours has produced a presentation made to the Board of Directors in August 2017, but it has not produced an agenda or any minutes from that meeting. Similarly, meeting minutes from a November 2017 board meeting contained relevant information, but Chemours has not produced an agenda for that meeting.

After the hearing on this matter, the court required Chemours to explain how it searched for documents responsive to these requests and to provide the documents Plaintiffs identified for in camera review.

Having reviewed Chemours' search process and the missing documents, the court is satisfied that it made a reasonable and good-faith effort to design a search protocol that would locate responsive documents. The attorneys and staff conducting the search reviewed documents individually for information related to Fayetteville Works and PFAS. The search was not limited solely to those terms, but also included other, related terms. It appears that Chemours produced all the responsive, non-privileged documents it identified through this search.

---

[2] This ruling applies only to these requests and is not a general ruling on the appropriate temporal scope of discovery.

But if that's the case, why didn't Plaintiffs receive the documents from April, August, and November 2017 that they discussed in their motion? There appear to be several reasons for the omission of those documents.

The court's review of the April 2017 agenda and minutes were not obviously responsive on their face. The agenda mentions that Kirsch would present on "Fluoroproducts Strategy," but it does not specifically mention Fayetteville. And the meeting minutes mention Kirsch twice, but they do not discuss the substance of his presentation or otherwise contain responsive information.

Similarly, the August and November 2017 agendas mention "Fayetteville Site Update" but do not mention PFAS or any related terms. So a reviewer would not necessarily know that they were responsive.

And the August 2017 minutes include responsive information, but that information appears to be part of a presentation by legal counsel. Chemours claims that information is privileged and has included the document on a privilege log. So, at least for now, Chemours need not produce that document.

The court orders that Chemours must produce the April 2017 agendas and meeting minutes, the August 2017 agenda, and the November 2017 agenda within 14 days from the date of entry of this order. But it otherwise denies this portion of Plaintiffs' motion.

**B.    Budgets, Financial Projections, and Financial Assessments related to Fayetteville Works PFAS**

Requests for Production 97, 98, and 100 seek various kinds of financial information related to Fayetteville Works PFAS. Request 97 asks for "[a]ll budgets or projections related to the removal of PFAS from Fayetteville Works or the area surrounding Fayetteville Works from 2015

5

to present." D.E. 460–4 at 23. Request 98 requests Defendants turn over "[a]ll budgets or projections related to filtering PFAS or PFAS Products from wastewater and air emissions at Fayetteville Works from 2015 to present." *Id.* at 23–24. And Request 100 is directed at "[a]ny Chemours internal financial assessments of PFAS from 2015 to present, including but not limited to documents discussing cost-benefit analyses of capital improvements, internal rates of return, and any discounted cashflow analyses." *Id.* at 26.

Defendants claim that they have already produced responsive documents. As for the first two categories, they claim that they have produced various responsive documents and claim that Plaintiffs have used those documents during depositions. And for the final category, Defendants maintain that they do not conduct cost-benefit analyses in the way described in the request, so there are no responsive documents. The closest responsive documents, Defendants claim, are their public SEC filings. Plaintiffs, however, disagree, and claim there are additional responsive documents.

Defendants have not shown that the requests seek irrelevant information or are not proportional to the needs of the case. Thus they must respond to the requests fully. If Defendants contend that they have already done so, they must notify Plaintiffs in writing of that fact. But if they have not, they must produce any additional responsive documents. The notification or the supplemental production must occur within 14 days from the date of entry of this order. Defendants should understand that if they stand on their claim that all responsive documents have been produced and that claim turns out to be untrue, they may be subject to sanctions under Rule 37(b).

C.  **Insurance Claims and Related Correspondence**

Plaintiffs, in Request 101, seek copies of all insurance claims (and related correspondence) made by Defendants relating to Fayetteville Works and PFAS. Defendants contend that they have not submitted any insurance claims, and thus there is nothing to produce. Plaintiffs have not rebutted this claim. So while Defendants need not produce any other documents, they must, within 14 days from entry of this order, supplement their response to this request to state that they have submitted no insurance claims and thus have no responsive documents in their possession, custody, or control.

D.  **Documents Related PwC and Houlihan Lokey**

In Requests 102 and 103, Plaintiffs seek documents related to communications and assessments with two consultants retained in connection with the spin-off of Chemours. The undersigned has addressed this issue in *Cape Fear Public Utilities Authority* v. *The Chemours Co. FC, LLC*, No. 7:17-CV-00195 (E.D.N.C. May 2, 2024). That decision is under review by the presiding district judge (who is also the presiding district judge here). The district judge's decision on the permissibility of discovery in *CFPUA* will control whether Defendants need to respond here. To the extent that decision does not resolve the dispute over these discovery requests, the parties should notify the undersigned and the court will determine how best to proceed.

II.  **Conclusion**

Plaintiffs' Motion to Compel (D.E. 458) is granted in part as provided above. Each party will bear their own costs.

Dated: September 30, 2024

*Robert T. Numbers II*
ROBERT T. NUMBERS, II
UNITED STATES MAGISTRATE JUDGE

Case 7:17-cv-00189-D   Document 593   Filed 09/30/24   Page 7 of 7