IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| **Brent Nix**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**The Chemours Company FC, LLC**, et al.<br><br>    Defendants. | No. 7:17-CV-00189-D |
| **Roger Morton**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**The Chemours Company**, et al.<br><br>    Defendants. | No. 7:17-CV-00197-D |
| **Victoria Carey**, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>**E.I. Du Pont De Nemours and Company**, et al.<br><br>    Defendants. | No. 7:17-CV-00201-D |

**Order on Motion to Seal**

Defendants want to prohibit the public from accessing materials they filed in connection with a motion about whether the contents of an expert report are beyond the scope of discovery. Plaintiffs oppose Defendants' request, arguing that they have not overcome the public's common law right of access to those documents. Having reviewed the parties' arguments, the court agrees with Plaintiffs and denies Defendants' motion.

I. Background

Plaintiffs have offered Dr. David L. Sunding as an expert witness in connection with class certification and the merits of this case. At the class certification stage, Plaintiffs relied on Sunding to try to establish that class members should be able to recover damages for a diminution in property value caused by Defendants' alleged conduct. Sunding claimed that class members' homes may lose value because they may "face higher utility bills that compensate the water district for its remediation expenditures (including both amortized capital costs and ongoing maintenance)." Sunding Class Certification Report ¶ 48, D.E. 336–29. While the District Court approved several damages theories for class treatment, Sunding's diminution-in-value theory was not among them. Oct. 4, 2023 Order at 56, D.E. 420.

The case then moved on to merits discovery. At that point, Sunding submitted another expert report. In his merits report, Sunding "estimate[d] damages that class members have been, and will be, forced to pay in the form of higher utility rates caused by the installation of PFAS treatment technologies by public water utilities impacted by PFAS contamination from Fayetteville Works." Resp. to Mot. for Protective Order at 1, D.E. 489.

Defendants asked the court to prohibit Plaintiffs from relying on this opinion and to prohibit any discovery about it. They claim that the increased-utility-rate theory was part of the diminution-in-value theory the district court rejected at class certification. And if the court

2

considers it to be a new damages theory, Defendants contend that it is inappropriate because the court did not approve of that theory at class certification.

Defendants then asked the court to place their motion for a protective order, Sunding's merits report, excerpts from Sunding's deposition, and an email about Sunding's report under seal. Plaintiffs oppose that request.

**II.     Discussion**

As with all aspects of the federal government, the federal courts belong to the people of the United States. And, as a result, the public has "a general right to inspect and copy . . . judicial records and documents." *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). Allowing public access to judicial records advances the public's "interest in ensuring basic fairness and deterring official misconduct not only in the outcome of certain proceedings, but also in the very proceedings themselves." *United States ex rel. Oberg* v. *Nelnet, Inc.*, 105 F.4th 161, 172–73 (5th Cir. 2024).

But the public's "right to inspect and copy judicial records is not absolute." *Nixon*, 435 U.S. at 598. "Every court has supervisory power over its own records and files, and" can deny the public access to those records and files when they may be used "for improper purposes." *Id.*

Parties regularly ask courts to shield judicial documents from the public eye. So to ensure that the public's right to access judicial records is not unduly limited, courts in the Fourth Circuit "must comply with certain substantive and procedural requirements" before granting a motion to seal. *Va. Dep't of State Police* v. *Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). At the outset, "the district court . . . must determine the source of the right of access with respect to each document, because only then can it accurately weigh the competing interests at stake." *Id.* (internal citation

3

omitted). That source could be either the common law or the First Amendment. *Id.* at 575. Determining the appropriate source of the right of access is important because "the common law 'does not afford as much substantive protection to the interests of the press and the public as does the First Amendment.'" *Id.* (quoting *Rushford* v. *New Yorker Mag., Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

The court must also give the public notice and a reasonable chance to challenge the request to seal. *Id.* And it must "consider less drastic alternatives to sealing[.]" *Id.* Then, if it decides to seal documents, the court must make specific findings and state the reasons for its decision to seal over the alternatives. *Id.*

With these requirements in mind, the court turns to Defendants' motion to seal.

The parties agree on the source of the right here. They both claim that the public's right of access stems from the common law, not the First Amendment. Mem. in Supp. at 5; Resp. in Opp. at 3. The court assumes this to be correct.

While the common law provides less protection to the public's right of access than the First Amendment, it still provides a presumption of public access to judicial documents. *Rushford*, 846 F.2d at 253. Yet a party can overcome that presumption if it can show that "countervailing interests heavily outweigh the public interests in access." *Id.* The factors the court considers in making this determination include "whether the records are sought for improper purposes, such as promoting public scandals or unfairly gaining a business advantage; whether release would enhance the public's understanding of an important historical event; and whether the public has already had access to the information contained in the records." *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984).

Defendants provide four reasons why they believe they have met that standard. The court will address each one in turn.

### A. Presence of Non-Public Information in SundingMerits Report

To begin with, Defendants argue that the documents they wish to seal contain "non-public information—financial values relating to Dr. Sunding's rejected 'pass-through' theory and extensive financial information concerning that theory." Mem. in Supp. at 4–5. Plaintiffs, however, contend that Sunding's report does not contain any confidential or non-public information. Resp. in Opp. at 6. Instead, they argue that Sunding's report is based on publicly available information and point to the portion of Sunding's report that lists the documents he relied on in forming his opinions. *Id.* at 5–6. Defendants did not address this issue in their reply.

Having reviewed the documents at issue, the court agrees with Plaintiffs that Defendants have not shown that they contain confidential, non-public information. Thus this argument does not justify maintaining those documents under seal.

### B. Designation of Materials as Confidential or Highly Confidential

Defendants also claim that sealing is appropriate because they designated the materials as confidential or highly confidential under a protective order entered by the court. Under that order, parties may designate discovery materials as either confidential or highly confidential if the designating party believes the materials meet certain criteria. Sept. 19, 2019 Order ¶ 2, D.E. 138. The parties are limited in their ability to use or disclose designated materials. *Id.* ¶¶ 6–11.

Once again, Plaintiffs argue that Defendants' position is factually inaccurate. They claim that Defendants have not designated any of the materials they wish to keep under seal as confidential or highly confidential. Defendants' motion contains no documentation supporting

5

such a designation and the documents themselves lack any markings supporting Defendants' claim. Seemingly conceding this argument, Defendants included a footnote in their reply brief in which they designate the materials as confidential. Reply Br. at 3 n.2.

Regardless of when the designation occurred, it has little to no bearing on whether it is appropriate to limit the public's access to that document once it has been submitted to the court in connection with a motion. *See Rushford*, 846 F.2d at 252 ("[D]iscovery, which is ordinarily conducted in private, stands on a wholly different footing than does a motion filed by a party seeking action by the court."). The standard a party must satisfy before being granted a protective order differs by an order of magnitude from the standard a party must satisfy to keep judicial documents out of the public eye. The former standard is satisfied by a showing of good cause. Fed. R. Civ. P. 26(c). While the latter category requires a showing of either that "countervailing interests heavily outweigh the public interests in access" or a compelling governmental interest and narrow tailoring, depending on the source of the public's right to access. *Rushford*, 846 F.2d at 253. And the "reasons for granting a protective order to facilitate pre-trial discovery may or may not be sufficient to justify proscribing" public access to judicial documents. *Id.* at 254 (addressing the public's First Amendment right to access). So whatever weight a unilateral designation carries, it is not enough, by itself, to justify permanently sealing the document.

Defendants also assert that since they have designated the materials as confidential or highly confidential, "the court need only determine whether the materials fall within the protective order because the 'good cause' showing was already made when the protective order was entered." Reply Br. at 2 (citing *Phillips* v. *Gen. Motors Corp.*, 307 F.3d 1206, 1213 (9th Cir. 2002)).

6

Neither the Fourth Circuit, nor the Supreme Court have adopted this position. And if this court were to do so, it would be ignoring binding precedent requiring it to make sure that "countervailing interests heavily outweigh the public interests in access[,]" *Rushford*, 846 F.2d at 253, before denying the public the right to access these documents. Thus the court does not find this argument persuasive.

So a party's unilateral decision to designate documents as confidential or highly confidential is not enough to overcome the public's common law right of access to those documents. Nor does that designation entitle a party to sealing of documents on a good cause standard. Defendants' arguments on this point do not justify granting the motion to seal.

### C. Prior Court Orders on Sealing of Sunding Materials

Defendants also argue that the court has already ordered that these materials are appropriate to keep under seal. In support of this argument, they point to a December 2022 Order granting a motion to seal. Mem. in Supp. at 5 (citing Dec. 1, 2022 Order, D.E. 405).

But, as Plaintiffs point out, the court did no such thing. Conceding that their argument lacked a factual basis, Defendants withdrew it. Reply Br. at 3 n.3.

### D. Prejudice from Public Disclosure of Sunding Materials

Finally, Defendants maintain that the documents should be kept under seal because it is irrelevant, and they would suffer prejudice if it became public. Their position focuses on the fact that the court declined, at class certification, to allow Plaintiffs to pursue a diminution-in-value damages theory. According to Defendants, "publication of alleged damage figures which have no place in this class litigation would be prejudicial to Defendants." Mem. in Supp. ¶ 1(b). They assert that if made public, Sunding's "damages argument . . . will be promptly republished by the media."

7

Reply Br. at 4. And Defendants claim they would be prejudiced by the media "publicizing an analysis that this Court has already deemed inappropriate." Reply Br. at 3. They would then be "forced to respond to Dr. Sunding's . . . damage measures even if they obtain a protective order protecting them from further discovery within the litigation." *Id.* Having to do so, Defendants maintain, would be "unreasonably annoying, expensive, disadvantageous, and prejudicial[,]" thus justifying keeping the documents under seal. In other words, Defendants say they would be prejudiced because they would need to respond to media reports that their action will cause people's utility rates to increase over time.

There are several problems with this argument. The most prominent of which is that Sunding's view that property owners may "face higher utility bills that compensate the water district for its remediation expenditures (including both amortized capital costs and ongoing maintenance)" is already public—he included it in his expert report in connection with class certification. Sunding Class Certification Report ¶ 48, D.E. 336–29. Defendants are aware of this fact since they mention it as a reason the court should grant their request for a protective order. The fact that this information is already public undermines any argument that Defendants will be further prejudiced unless the court grants its motion.

Another issue with Defendants theory is, as Plaintiffs note, courts have found that generalized concerns over harm to a corporation's reputation are not enough to overcome the public's right of access to judicial records. Plaintiffs point to the Fourth Circuit's opinion in *Doe* v. *Public Citizen*, 749 F.3d 246 (4th Cir. 2014), to support this point. *Public Citizen* focused on whether corporate concerns over reputational harm could overcome the public's First Amendment right of access to judicial records. The appellate court concluded that they were not because, among other reasons, every circuit to have addressed the issue found that reputational harm concerns were

8

insufficient to meet the common law standard, let alone the more onerous First Amendment standard. *Id.* at 269–70 (citing cases).

Although the Fourth Circuit has not squarely addressed this issue in a published opinion,[1] district courts in the Fourth Circuit agree that a generic concern over reputational harm does not overcome the common law right of access. *See G. W. Aru, LLC* v. *W.R. Grace & Co.*, No. JKB-22–2636, 2023 WL 5512226, at *2 (D. Md. Aug. 25 2023); *Companion Prop. & Cas. Ins.* v. *Wood*, No. 3:14-CV-03719, 2017 WL 279767, at *2 (D.S.C. Jan 23, 2017); *United States ex rel. Permison* v. *Superlative Technologies, Inc.*, 492 F. Supp. 2d 561, 564–65 (E.D. Va. 2007). Given that "[a]djudicating claims that carry the potential for embarrassing or injurious revelations about a corporation's image . . . are part of the day-to-day operations of federal courts[,]" *Pub. Citizen*, 749 F.3d at 269, this court agrees. A generalized concern over the potential for harm to a corporation's reputation is insufficient to overcome the public's common law right of access to judicial documents. And Defendants have not provided the court with any evidence supporting specific harm that it would suffer if these documents are disclosed.

Defendants also argue that they "should not be made to suffer the prejudice associated with publicizing an analysis that this Court has already deemed inappropriate." Reply Br. at 3. "But the public right of access under the First Amendment and common law is not conditioned upon whether a litigant wins or loses." *Pub. Citizen*, 749 F.3d at 273. So the fact that Defendants

---

[1] The Fourth Circuit did, however, address this issue in an unpublished (and thus non-precedential) opinion, and concluded that concerns over a corporation's reputational harm could not overcome the common law right of access. *Under Seal* v. *Under Seal*, 27 F.3d 564, 1994 WL 283977, at *3 (4th Cir. 1994) (Table) (quoting *Brown & Williamson Tobacco Corp.* v. *FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983)).

9

successfully excluded the diminution-in-value theory from class consideration does not provide a basis to deny the public with access to documents related to it.

Finally, it is important to remember that this case is a class action, and thus it impacts the rights of absent class members. Resolving the protective order motion involves determining whether the class certification order limits the damages the class can recover. This is an important issue to the class and, particularly, to class members who are not actively involved in the suit but will still have their rights impacted by its outcome. Given the effect of the motion, the public has a substantial interest in knowing what materials the court considered in resolving it. So, to the extent that Defendants suffer any prejudice because of the public viewing these documents, it is outweighed by the public's interest in doing so.

Defendants have not established that potential prejudice from publication of the materials at issue in this motion heavily outweighs the public's interest in accessing those documents.

*** 

Before concluding, the court notes that it once again finds itself confronted with a filing that contains substantial, material misrepresentations. *See* June 26, 2024 Order at 3–4, D.E. 491. As mentioned above, Defendants' motion contained four reasons why they believe they could overcome the public's common law right of access. But three of Defendants' arguments contained factual misrepresentations. They claimed that Sunding's merits report contained non-public information. But it did not. They claimed that they had designated the documents they wished to seal as confidential or highly confidential. But, at the time they made that representation, they had not. And they claimed that the court had previously placed items at issue in this motion under seal. But it had not.

While it should go without saying, apparently it not only needs to be said, but bears repeating: "These misstatements are unacceptable. Their presence negatively reflects on the attorneys who drafted and signed that document." *Id*. at 4.

The parties have exhausted the court's tolerance for these types of mistakes. Future material misstatements are likely to be met with an order to show cause why the attorney who signed the document should not be sanctioned under Rule 11 (or one of the other, more unpleasant tools available to the court to deal with attorney misconduct).

### III. Conclusion

For all these reasons, Defendants' motion to seal (D.E. 487) is denied. The materials at issue, however, will remain under seal for 14 days from entry of this order to allow either party to seek review of this order by a United States District Judge. 28 U.S.C. § 636(b)(1)(A). If either party seeks review, the materials will remain under seal until it is resolved. If neither party seeks review within the time allowed, the Clerk of Court shall unseal those documents without further order from the court.

The court will also place the order resolving Defendants' motion for a protective order, filed contemporaneously with this order, under seal. The same terms that apply to the continued sealing of the documents at issue in this motion apply to that order.

Dated: September 30, 2024

_____
Robert T. Numbers, II
United States Magistrate Judge