UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

| | |
|---|---|
| VICTORIA CAREY, MARIE BURRIS, MICHAEL KISER, BRENT NIX, individually and on behalf of all others similarly situated,<br><br>　　　　　Plaintiffs,<br>v.<br><br>THE CHEMOURS COMPANY FC, LLC and E.I. DUPONT DE NEMOURS AND COMPANY,<br><br>　　　　　Defendants. | Civil Action No. 7:17-cv-00189-D<br>Civil Action No. 7:17-cv-00197-D<br>Civil Action No. 7:17-cv-00201-D |

**DEFENDANTS'[1] REPLY MEMORANDUM IN SUPPORT OF CLASS DECERTIFICATION**

---

[1] The Chemours Company FC, LLC and EIDP, Inc. (formerly known as "E.I. DuPont de Nemours and Company, Inc.").

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................................ ii

TABLE OF AUTHORITIES ............................................................................................... iii

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 1

    I.     Defendants' Motion is Timely ...................................................................................... 1

         A.     Defendants' Motion Is Based on New Evidence............................................. 2

         B.     These New Developments Occurred After the Court of Appeals Denied Defendants' Petition to Appeal the Certification Order ................................................... 4

         C.     Issuance of Class Notice is Irrelevant to Decertification ............................. 4

    II.    The Class Representatives are Inadequate and Atypical ................................................. 6

    III.   Causation, Injury, and Damages Cannot be Proven Using Common Evidence .............. 7

         A.     Plaintiffs Cannot Prove Classwide Legal Causation With Expert Testimony ............. 7

         B.     Alternate Causation Issues Merit Decertification......................................... 9

         C.     Plaintiffs' Lack of Common Evidence of Toxicity Merits Decertification................ 10

CONCLUSION.................................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*Brooks v. E.I. du Pont de Nemours & Co.*, 944 F. Supp. 448 (E.D.N.C. 1996) ........................ 3, 10

*Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538 (E.D. Va. 2000) ............................................. 2

*Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817 (8th Cir. 2016) ......................................... 5

*E.I. du Pont de Nemours & Co. v. Nix*, No. 23-00269 (4th Cir. Oct. 18, 2023) ............................. 4

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ..................................................................... 5

*In re Wildewood Litigation*, 52 F.3d 499 (4th Cir. 1995) ............................................................. 10

*Mazzei v. Money Store*, 829 F.3d 260 (2d Cir. 2016) ..................................................................... 1

*Mirkin v. Xoom Energy, LLC*, No. 18-CV-2949, 2024 WL 306833 (E.D.N.Y. June 20, 2024) .... 4

*Stott v. Haworth*, 916 F.2d 134 (4th Cir. 1990) ............................................................................ 1

**Other Authorities**

U.S. EPA, EPA Doc. No.: 815R24005, *Responses to Public Comments on Per- and Polyfluoroalkyl Substances (PFAS) National Primary Drinking Water Regulation* 3-1 (Apr. 2024), https://www.epa.gov/system/files/documents/2024-04/pfas-comment-response-document_final-508_v2.pdf ................................................................................................ 3

**Rules**

Fed. R. Civ. P. 23(c) ........................................................................................................................ 1

# INTRODUCTION

Recent developments have undermined the bases for this Court's October 4, 2023 Certification Order. In April 2024, well after this Court's certification order, EPA released binding maximum contaminant levels ("MCLs") for five PFAS, two of which are at issue in this litigation (PFOA and HFPO-DA ("GenX")). In September 2024, Plaintiffs filed oppositions to Defendants' Motions to Exclude various expert opinions. In these oppositions, Plaintiffs made two vital concessions: (1) That they have no expert offering an opinion on what level of PFAS contamination is harmful to human health; and (2) That none of the data relied upon by Plaintiffs' experts was intended to be statistically significant and cannot be applied classwide. Plaintiffs have overpromised and under delivered. Now Plaintiffs argue that nothing has changed, that EPA's MCLs are irrelevant, and that they can somehow still cobble together expert proof of classwide causation. But none of these points stands up to scrutiny. Decertification is now appropriate.

# ARGUMENT

## I. Defendants' Motion is Timely.

Plaintiffs attempt to argue that Defendants' Motion is untimely, for a variety of reasons. None are correct. Each of these arguments ignores the plain text of Fed. R. Civ. P. 23, which provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Plaintiffs' arguments also ignore the clear law that this Court, irrespective of whether Defendants even move to decertify the classes, has an independent duty to reevaluate its class certification order based on evidentiary developments in the case. *Stott v. Haworth*, 916 F.2d 134, 139 (4th Cir. 1990) ("[A]n order certifying a class must be reversed if it becomes apparent, at any time during the pendency of the proceeding, that class treatment of the action is inappropriate."); *Mazzei v. Money Store*, 829 F.3d 260, 266 (2d Cir. 2016) ("Indeed, because the results of class proceedings are binding on absent class members, the

1

district court has the affirmative duty of monitoring its class decisions in light of the evidentiary development of the case.") (internal quotation marks and citations omitted); *Chisolm v. TranSouth Fin. Corp.*, 194 F.R.D. 538, 544 (E.D. Va. 2000) ("[T]he Court is duty bound to monitor its class decision and, where certification proves improvident, [may] decertify, subclassify, alter, or otherwise amend its class certification.").

### A. Defendants' Motion Is Based on New Evidence.

Plaintiffs argue first that Defendants' Motion should be denied because there have been no new developments since the classes were certified. [D.E. 632 at 12–13]. This is wrong. Throughout briefing for *Daubert* motions and for Defendants' motion for partial summary judgment, Plaintiffs reduced the scope, or pulled back entirely, on several expert proof promises relied on at the class certification stage and as set forth in Defendants' Motion, three major events have occurred in this litigation: 1. Plaintiffs' admit that their experts' opinions are not based on statistically significant data; 2. The EPA enacted enforceable MCLs for certain PFAS compounds; and 3. Plaintiffs' retract the opinion that there is no safe level of PFAS contamination.

First, Plaintiffs' admission that none of their experts' opinions are based on statistically significant data requires decertification. Each of Plaintiffs' experts rely on limited sampling data to extrapolate an opinion to the entire class of thousands upon thousands of persons, yet, in *Daubert* briefing and in Plaintiffs' opposition to decertification, Plaintiffs now admit that they "[do not] seek to rely on sampling data as a source of statistical significance." [D.E. 632 at 11]. Rather, Plaintiffs ask this Court to simply trust that the experts' opinions are applicable to every class member. [D.E. 632 at 20–24].

Second, on April 10, 2024, well after this Court's certification order, EPA enacted binding and enforceable MCLs for five PFAS compounds, including two at issue in this case, PFOA and

2

GenX.[2] The EPA was unable to issue additional MCLs for other PFAS compounds due to the lack of scientific evidence available.[3] As a result, this Court no longer needs to draw the line of what level of PFAS contamination is actionable because the EPA has now drawn that line. And under *Brooks v. E.I. du Pont de Nemours & Co.*, 944 F. Supp. 448 (E.D.N.C. 1996), class members with levels of regulated PFAS below the EPA's MCLs do not have actionable claims. As this determination cannot be made on a classwide basis, decertification is necessary.

Third, Plaintiffs admit in *Daubert* briefing that their sole expert who opined there was no safe level of PFAS no longer offers that opinion. Rather, Plaintiffs now admit that this expert, Dr. DeWitt, "no longer opines on the level of PFAS in class members' drinking water that could be considered protective of human health." [D.E. 583 at 6]. The result of this retraction is that Plaintiffs no longer have an expert opining on what is or is not an acceptable level of PFAS contamination. Accordingly, the only baseline for actionable contamination is the MCL established by the EPA.

These are significant developments of which Defendants, and the Court were unaware at the time of certification.[4] Defendants' Motion is not based on their own disagreement with the Court's certification opinion, but rather, that the bases for the Court's certification opinion are no longer true. Even Plaintiffs' chart acknowledges the existence of new evidence, but

---

[2] *Per- and Polyfluoroalkyl Substances (PFAS)*, U.S. EPA, https://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (Feb. 6, 2025).

[3] In response to public comments, the EPA stated that it believes there is sufficient information available at this time only to regulate the six compounds it has opted to regulate. U.S. EPA, EPA Doc. No.: 815R24005, *Responses to Public Comments on Per- and Polyfluoroalkyl Substances (PFAS) National Primary Drinking Water Regulation* 3-1 (Apr. 2024), https://www.epa.gov/system/files/documents/2024-04/pfas-comment-response-document_final-508_v2.pdf.

[4] Plaintiffs complain that this Motion was filed after substantial discovery in this case. [D.E. 583 at 2]. Such discovery, in fact, provides the grounds for this motion: subsequent merits discovery has revealed that Plaintiffs' experts cannot make good on the promises they made at the class certification stage.

3

mischaracterizes it as "false" or "irrelevant." [D.E. 632 at 10–12]. This evidence is neither false nor irrelevant and Defendants will address its merits later in this Reply, but regardless, if Plaintiffs agree with these new developments, their own chart demonstrates that these issues were not previously before the Court.

### B. These New Developments Occurred After the Court of Appeals Denied Defendants' Petition to Appeal the Certification Order.

Next, Plaintiffs assert that decertification is inappropriate because the Court of Appeals denied Defendants' petition to review the Court's certification order. [D.E. 632 at 13–14]. But the significant developments outlined above were not, and could not have been, addressed in Defendants' petition to appeal this Court's certification order. *See* Petition for Permission to Appeal, *E.I. du Pont de Nemours & Co. v. Nix*, No. 23-00269 (4th Cir. Oct. 18, 2023), ECF No. 2-1 at 14–19. As the language quoted by Plaintiffs themselves demonstrates, cases do not proscribe motions to decertify after an interlocutory appeal has been denied so much as they discourage decertification motions based on no new evidence or law. *E.g.*, *Mirkin v. XOOM Energy, LLC*, No. 18-CV-2949, 2024 WL 306833, at *3 (E.D.N.Y. June 20, 2024) ("*When there has been no significant change between the order certifying the class and the motion to decertify*, and when the Court of Appeals has already refused the movant's request for interlocutory review under Rule 23(f), courts often view a motion to decertify with disfavor.") (emphasis added). Here, Defendants did seek interlocutory review of the Court's predominance analysis, but without the benefit of Plaintiffs' concession on causation and toxicity, and without the benefit of the new MCLs.

### C. Issuance of Class Notice is Irrelevant to Decertification.

Finally, Plaintiffs assert that Defendants have waived their right to move for decertification because they did not object to the class notice. [D.E. 632 at 14]. But no case says this, likely because—as is the case here—the points upon which decertification are relied on stem from merits

4

discovery and subsequent briefing that took place after the class notice period. Defendants had no basis to object to notice being issued and to do so would have been premature.

Plaintiffs misstate *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982), in their assertion that decertification is disfavored when class notice has issued because "a certification order is tentative 'particularly during the period *before any notice is sent* to members of the class.'" [D.E. 632 at 14 (quoting *Falcon*, 457 U.S. at 160 (emphasis added by Plaintiffs to original quote)]. The full quotation from *Falcon* is,

> Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. For such an order, particularly during the period before any notice is sent to members of the class, "is inherently tentative." This flexibility enhances the usefulness of the class-action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable.

*Falcon*, 457 U.S. at 160 (citation omitted). *Falcon*, in line with the plain text of Rule 23, iterates that the certification order is "inherently tentative," and only states that it is "particularly" so during the period before any notice is sent to members of the class. *Falcon* makes no suggestion or insinuation that modification of the certification order after class notice has issued is disfavored.

Additionally, Plaintiffs rely on *Day v. Celadon Trucking Services, Inc.*, 827 F.3d 817, 832 (8th Cir. 2016) to assert that moving for decertification after class notice has issued is meritless. But *Day* said no such thing. *Day* noted that the motion for decertification was meritless in that case because the class notice process had already resolved the issues that the defendant had raised in its decertification motion. *Id.* at 832 ("[Defendant] had a full and fair opportunity to contest class certification. In approving the notice to potential class members, the district court noted that the employees addressed the objections that [defendant] raised and [defendant] did not file any additional objections. After receiving the attention and consideration of the district court on this issue, principles of fair adjudication require [defendant] to provide good reason before the district

5

court revisits the issue."). Defendants' Motion is timely.

**II.     The Class Representatives are Inadequate and Atypical.**

Plaintiffs never dispute the fact that none of the class representatives who seek to represent a class seeking new replacement water heaters can offer any evidence that they are entitled to replacement water heaters. [D.E. 632 at 15–16]. Instead, they argue that Defendants' evidence is "old" and "recycled" from Defendants' Motion for Partial Summary Judgment. It is indeed "recycled" from Defendants' Motion for Partial Summary Judgment, because Plaintiffs, in their Opposition, never contested this critical fact. It stands to reason that where a class representative's proof is too weak to meet even the summary judgment standard, their adequacy as a class representative becomes a foregone conclusion.

To the extent this evidence is "old," the time for this Court to address this failure of proof was not at the class certification stage, but at the summary judgment stage. Prior to the filing of Defendants' motion for partial summary judgment, the Court has never addressed the lack of proof relating to Plaintiffs' water heater claims, as Defendants had no basis to challenge the claims until summary judgment. Defendants also could not have filed their motion for decertification prior to completion of summary judgment and *Daubert* briefing because the motion relies on Plaintiffs' failure to provide any additional evidence to support their claims and Plaintiffs' concessions in *Daubert* briefing. Now Plaintiffs' inability to offer any evidence that FW PFAS is being recirculated from the water heaters of the class representatives, combined with their admission that Plaintiffs cannot statistically prove their class claims through water sampling data, serves as proof that causation cannot be proven on a classwide basis, either through the claims of the class representatives or through water sampling data.

Plaintiffs now deny that they have conceded that the class representatives cannot recover

6

most of the damages sought by the class they seek to represent. [D.E. 632 at 19; 585 at 11–14]. But this Court need look no further than Plaintiff's Opposition to Defendants' Motion for Partial Summary Judgment. Nowhere in their Opposition do Plaintiffs even attempt to explain how the class representatives can recover new water heater replacement costs for themselves without any evidence that FW PFAS is being stored in their heaters and recirculated into their taps, much less how they can recover such damages on behalf of the class. [D.E. 585 at 12–15]. Instead, Plaintiffs assert that their "substantial body of expert evidence shows: all class properties—including those of the three class representatives are contaminated with PFAS from Defendants' Fayetteville Works facility." [D.E. 632 at 17]. That, of course, is not the issue with respect to water heaters. And, as set forth below, Plaintiffs' recent concessions show that their expert testimony comes nowhere close to proving causation for anything on a classwide level.

### III. Causation, Injury, and Damages Cannot be Proven Using Common Evidence.

Plaintiffs attempt to demonstrate they have sufficient classwide proof to prove their claims, alleging that their experts are sufficient, that alternate causation may be resolved classwide, and that PFAS toxicology is irrelevant. Yet, based on Plaintiffs' admissions, each point is unavailing.

#### A. Plaintiffs Cannot Prove Classwide Legal Causation With Expert Testimony.

Plaintiffs attempt to defy common sense, the *Daubert* standard, and the Rules Enabling Act by asserting that expert testimony can somehow prove that FW PFAS is being stored in the water heaters and recirculated into the taps of the class representatives and every other member of the class, despite the recent admission that none of the data is statistically significant and the water sampling data undisputedly proving the opposite. But, as revealed in *Daubert* briefing, none of their experts even purport to offer such an opinion, and if they did, such an opinion would be inadmissible as failing to be applicable to the entire class.

7

Case 7:17-cv-00189-D    Document 633    Filed 02/07/25    Page 10 of 15

- **Dr. Kimberly Gray**, as stated in Defendants' Motion, nowhere opines that FW PFAS is being stored in the water heaters and recirculated into the taps of every class member ; instead, she merely offers a biological mechanism by which PFAS can adsorb to tanks, without commenting on whether this always occurs. She has no data to support a classwide opinion even if she purported to offer one.

- **David Duncklee** discusses the prevalence of air emissions; offering no opinion FW PFAS is being stored in the water heaters and recirculated into the taps of every class member. He does not even opine that FW PFAS is found on the properties of all class members. [D.E. 569 at 14 (stating that Mr. Duncklee does not "intend[] the sampled properties to be representative of other well water properties.")]. He has no data to support a classwide opinion even if he purported to offer one.

- **Ruth Albright** offers no opinions that FW PFAS is being stored in the water heaters and recirculated into the taps of every class member, or even that FW PFAS has impacted every class property. She merely performs air modeling and eschews any classwide causal opinions.

- **Brian Gidlow** offers nothing more than a general opinion that PFAS will reach the retail connections served by the water treatment plants that deliver water from the Cape Fear River. [D.E. 336-22 (sealed) Gidlow Report at ¶ 1]. He offers no opinions as to whether that PFAS will reach the water heaters of all class members, adsorb to the water heaters of all class members, or be recirculated into the taps of all class members. He has no data to support a classwide opinion even if he purported to offer one.

- **Roger Griffith** nowhere opines that FW PFAS is being stored in the water heaters

and recirculated into the taps of all class members; he offers no recirculation opinions. And while he does purport to offer an opinion that "PFAS contaminate the sediment layer in water heaters in a similar concentration as in the incoming water," nowhere does he even attempt to opine that this happens to the water heater of every class member. [D.E. 585-5 Griffith Report at ¶ 54]. More fundamentally, even this limited opinion is valueless. Mr. Griffith explicitly states that this opinion is "[b]ased upon my review of prior sampling results from the sediment and water results in the water heaters . . . ." *Id.* In other words, Plaintiffs stake their classwide causal analysis on the same sampling data that they have already conceded is inadequate to draw any classwide conclusions: **"Mr. Griffith does not opine that his data is a statistically significant representation of all class members' water heaters—meaning that all of Defendants' criticisms attack opinions that Mr. Griffith never offers."** [D.E. 571 at 17].

In sum none of Plaintiffs' experts even purports to offer the type of classwide causal opinions Plaintiffs promised the Court at the class certification stage. This fundamental failure of proof demands decertification.

### B. Alternate Causation Issues Merit Decertification.

Plaintiffs assert that any alternate causation questions are merits issues that are not relevant to class certification. In its order, the Court credited the "reports of plaintiffs' expert witnesses Albright, Duncklee, and Gidlow describing avenues of common causation." [D.E. 420 at 43]. But this ignores Plaintiffs' admission that the class also seeks recovery for compounds that are not unique to Fayetteville Works. In its certification order, the Court operated on the assumption that some level of PFAS causes harm to human health and that all PFAS for which Plaintiffs seek

9

recovery are directly traceable to Defendants. Neither assumption continues to be true.

### C. Plaintiffs' Lack of Common Evidence of Toxicity Merits Decertification.

Plaintiffs assert the Court has rejected the issue of whether PFAS in drinking water qualifies as an actual injury requiring a remedy. This is incorrect, as the Court merely declined to reach that issue at the class certification stage. [D.E. 420 at 30–31]. That was when Plaintiffs claimed to have expert evidence "there is no safe level of PFAS exposure for human beings" and before the EPA issued binding MCLs for certain PFAS compounds. [*Id*]. Now Plaintiffs have abandoned these expert opinions. [D.E. 583 at 2 (Dr. DeWitt "no longer opines on the level of PFAS in class members' drinking water that could be considered protective of human health.")]. The Court also distinguished *Brooks v. E.I. du Pont de Nemours & Co.*, 944 F. Supp. 448 (E.D.N.C. 1996) and *In re Wildewood Litigation*, 52 F.3d 499 (4th Cir. 1995) because at the time there were no enforceable regulations relating to PFAS contamination levels. [D.E. 420 at 49–50]. This is no longer the case. This means Plaintiffs cannot state a prima facie case for damages from any unregulated or sub-MCL compounds, and Plaintiffs can no longer rely on the mere presence of any compound in any amount as proof of injury and damages. Now, Plaintiffs must prove (1) what types of PFAS are present on a given property, (2) in what amount, and (3) whether they are regulated or unregulated, to state a cause of action. Then, if a given property can pass this hurdle, each individual Plaintiff must show actual impairment of the use and enjoyment of his or her property and actual damages to the use of the property. As demonstrated, this cannot be accomplished using classwide evidence.

### CONCLUSION

For these reasons, the Court should decertify the classes certified in its October 4, 2023, Order, [D.E. 420].

Date: February 7, 2025                                          Respectfully submitted,


/s/ *Thomas H. Segars*
Thomas H. Segars
N.C. State Bar No. 29433
**ELLIS & WINTERS LLP**
P.O. Box 33550
Raleigh, NC 27636
Phone: 919-865-7000
Fax: 919-865-7010
tom.segars@elliswinters.com

Kenneth J. Reilly
**SHOOK, HARDY AND BACON, LLP**
201 S. Biscayne Blvd
3200 Citigroup Center
Miami, FL 33131
Phone: 305-358-5171
Fax: 305-358-7470
kreilly@shb.com

Britta N. Todd
Andy Carpenter
Brent Dwerlkotte
**SHOOK, HARDY AND BACON, LLP**
2555 Grand Blvd.
Kansas City, MO 64108
Phone: 816-559-2487
Fax: 816-421-5547
btodd@shb.com
acarpenter@shb.com
dbdwerlkotte@shb.com

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on February 7, 2025, a true and correct copy of the foregoing was electronically filed using the Court's ECF system which effected service on all parties entitled to service.

/s/ *Thomas H. Segers*
Thomas H. Segers

**Attorney for Defendants**