| | |
|---|---|
| VICTORIA CAREY, MARIE BURRIS, MICHAEL KISER, BRENT NIX, and ROGER MORTON, individually and on behalf of all others similarly situated,<br><br>              Plaintiffs,<br>v.<br><br>THE CHEMOURS COMPANY FC, LLC and E.I. DU PONT DE NEMOURS AND COMPANY, INC.,<br><br>              Defendants. | Civil Action No. 7:17-cv-00189-D<br>Civil Action No. 7:17-cv-00197-D<br>Civil Action No. 7:17-cv-00201-D |

## DEFENDANTS'[1] SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION FOR DECERTIFICATION

---

[1] The Chemours Company FC, LLC, The Chemours Company (together "Chemours"), and EIDP, Inc., f/k/a E.I. DuPont de Nemours and Company, Inc. ("Defendants").

## INTRODUCTION

Pursuant to this Court's April 20, 2026 Order [D.E. 674], Defendants submit this supplemental briefing in support of their Motion for Decertification and Motion for Summary Judgment.[2] Plaintiffs' concessions, sampling data, and this Court's *Daubert* rulings continue to demonstrate that Plaintiffs cannot prove their damages claims, either individually through the class representatives or collectively through common proof. This is true with respect to the damages sought by both the public utility and groundwater classes (replacement water heaters and filtration systems). As a result, Defendants respectfully request that the Court either grant summary judgment[3] in favor of Defendants against the certified classes, and/or decertify the previously certified classes so that individual plaintiffs may attempt to prove their claims individually.

## ARGUMENT

### I. Defendants are Entitled to Partial Summary Judgment.

Defendants established in their Motion for Summary Judgment that the class cannot meet its burden of proving its damages claims. Specifically: (1) the class representatives can produce no evidence that the sediment in their water heaters contains FW PFAS, [D.E. 551 at 4-7, 11]; (2) the water heater sampling data from absent class members is inadequate to prove Plaintiffs Carey and Nix's (and by extension the public utility class's) water heater replacement or filtration claims, [*Id.* at 7-10-11-12]; (3) the groundwater sampling data from absent class members is inadequate to prove Dr. Burris' (and by extension the groundwater class's) water heater replacement or

---

[2] Per the Court's Order, this motion does not argue new bases for summary judgment or decertification and only addresses impacts of the Court's *Daubert* rulings on the pre-existing motions or updates relevant facts. This motion does not address arguments made in Defendants' summary judgment or decertification motion that were not impacted by the Court's *Daubert* rulings.

[3] Plaintiffs maintain that certain plaintiffs may have a claim for bottled water expenses. *See* p 3.

filtration system claims, [*Id.* at 11-15]; (4) the vast majority of FW PFAS were never detected on the properties or in the drinking water of the class representatives, [*Id.* at 7-10; 11-12]; and, (5) each of the class representatives either now lives outside the class area, receives water from PFAS-free sources, or has already received remedies for their water sources, which moots their filtration damages claims. [*Id.* at 11-15]. The current record and this Court's *Daubert* rulings confirm that summary judgment in Defendants' favor is now appropriate.

**A. Summary Judgment in Favor of Defendants is Warranted on Plaintiffs' Claims for Replacement Water Heaters Asserted by Either Class.**

The record remains undisputed that none of the class representatives present any direct evidence that the sediment in their water heaters contains FW PFAS. Dr. Burris (and by extension the Groundwater Class) presents no evidence of PFAS testing of Dr. Burris' water heater. [D.E. 551 at 11]; [D.E. 614 at 7-8]. Plaintiffs Carey and Nix (and by extension the Public Utility Class) similarly fail to present adequate testing data demonstrating PFAS exposure via their water heaters. [D.E. 551 at 5-7]; [D.E. 614 at 7-8]. No expert opinion can change Plaintiffs' lack of evidence.

Plaintiffs do not deny these facts. Instead, Plaintiffs asserted in their opposition that the opinions of experts Roger Griffith, Kimberly Gray, David Duncklee, and Brien Gidlow could fill the evidentiary gap. [D.E. 585 at 8-10]. But based on the uncontroverted record, the limits of these opinions, and this Court's *Daubert* rulings, it is clear they cannot. In fact, none of them even purport to opine that the sediment contained in the hot water heaters of the class as a whole (or even some of the class) contain FW PFAS:

- The Court explicitly agreed with Defendants that Mr. Griffith's "dataset is too limited to draw classwide conclusions regarding plaintiffs' alleged PFAS exposure or to opine broadly about any alleged health risks associated with PFAS exposure." [D.E. 649 at 43].

3

- The Court agreed that Mr. Duncklee (Plaintiffs' groundwater expert) may not opine as to whether Plaintiffs require water heaters. [D.E. 649 at 33].

- Dr. Gray's opinions have only ever assumed that PFAS is present in the pipe infrastructure. [D.E. 420 at 31]; [D.E. 614 at 8].

- And while Mr. Gidlow may opine that some theoretical amount of FW PFAS will reach every retail connection, [D.E. 420 at 43], he offers no opinion on the actual amounts present in Plaintiffs' drinking water or whether the class's water heaters contain PFAS—his report relies on the same data from Mr. Griffith that this Court determined is too limited to draw classwide conclusions. [D.E. 614 at 9]; [D.E. 587-4 at ¶¶ 19, 45].

As such, Plaintiffs, who are also the class representatives, lack any evidence (direct or indirect) that the sediment of their water heaters is contaminated by FW PFAS. And none of Plaintiffs' expert witnesses even purport to offer an opinion that the hot water heaters of every class member are contaminated with FW PFAS. And, as the Court agrees, none of them could, as there is no data for such a sweeping assertion. [D.E. 649 at 33, 43]. Absent this evidence, Plaintiffs', and by extension the class's, claims for replacement water heaters or the costs to flush water heaters fail for want of proof of injury and damages. As go the claims of the class representatives, so go the claims of the class.

### B. Summary Judgment is Warranted in Defendants' Favor on All Filtration Claims Asserted by Either Class.

Plaintiffs' claims for the costs to install water filtration systems also fail for two separate reasons, both confirmed by the uncontroverted record and this Court's *Daubert* rulings—Plaintiffs lack evidence of the presence of FW PFAS in their drinking water, and otherwise have no evidence that PFAS present on their properties is traceable to Defendants and causing them harm.

4

First, the record remains undisputed that the vast majority of the FW PFAS compounds for which the classes seek recovery were never detected on the properties or in the drinking water of the class representatives, [D.E. 551 at 7-10; 11-12], and each of the class representatives either now lives outside the class area, receives water from PFAS-free sources, or has already received remedies for their water sources. [D.E. 551 at 15-17]; [D.E. 630 at 13-14]. Plaintiffs do not deny these facts, but argue instead that the class claims may not be completely mooted because some of the class members may still assert claims for the costs of bottled water. Bottled water claims aside, summary judgment on the class's filtration claims is appropriate where none of the class representatives require filtration.

Plaintiffs cannot offer any evidence to fill this evidentiary gap. As explained in Defendants' motion for summary judgment, the uncontroverted record demonstrates that the class representatives either never had or no longer face exposure to FW PFAS in excess of any applicable MCL. [D.E. 551 at 20–21 (citing *Brooks v. E.I. du Pont de Nemours & Co.*, 944 F. Supp. 448, 449 (E.D.N.C. 1996) (holding there can be no injury based on contamination where the alleged contamination does not exceed regulatory safe levels)]. For example, it is undisputed that the level of GenX measured in Ms. Carey's water heater in 2019 were below the EPA's MCL or that Ms. Carey's water provider no longer sources its water from the Cape Fear River. [D.E. 551 at 21]. Mr. Nix moved out of the class area in 2020. [D.E. 551 at 15-17]; [D.E. 630 at 13-14]. It is also uncontroverted that Dr. Burris has not resided at the residence she owns within the class area since 2015 and that she instead rents out her class area property to her ex-husband. [*Id.*]. In addition, Dr. Burris has spent no money due to FW PFAS, including for bottled water, and has already received a free granulated active carbon filtration system at the class area property she owns. [*Id.* at 15-16]. And while Dr. Burris voluntarily moved back into the class area in 2022,

5

there has been no testing of her property's well water or water heater. [*Id.*] As such, Plaintiffs lack evidence of FW PFAS exposure.

But while the Court can assume that each member of the groundwater class has *some* level of *some* type of FW PFAS on its property (because the class is defined as those individuals who receive drinking water from a groundwater source with "quantifiable" concentrations of any FW PFAS, [D.E. 334-1; 23-24]), there is no evidence that the FW PFAS identified on any of the class properties amount to an injury or property damage. This is because Plaintiffs lack any evidence establishing what level, if any, of exposure to FW PFAS, is sufficiently dangerous to human health to amount to damage to each class member's property. As this Court has explained, the question of whether exposure to a potentially toxic compound has unreasonably interfered with a class member's use and enjoyment of their property depends on not just whether that property was exposed to a compound, but whether the property owner can prove that the levels of exposure to the specified compound are "hazardous to human beings generally as well as the plaintiff's actual level of exposure." *Nix*, 805 F. Supp.3d 626, 655 (E.D.N.C. 2025).

Nor can Plaintiffs' expert witnesses fill this evidentiary gap. This Court has rejected the unsupported claim that any "non-zero" level of FW PFAS creates a human health risk. [D.E. 649 at 40, 61-62 (excluding Drs. DeWitt and DeGrandchamp's "no safe level of exposure" opinions)]; [*Id.* at 34-35 ("Although expert testimony as to exposure levels was not necessary at the class certification stage, the court acknowledged that the parties would eventually need to have a more definitive view of the 'lines' between safe and unsafe exposure values.")]. And none of Plaintiffs' experts has attempted to (or could) opine that the levels of FW PFAS found in each class member's wells or water heaters creates a health risk capable of impairing their property rights.

6

As such, Defendants remain entitled to summary judgment on every Plaintiff's water heater and water filtration claims, Plaintiff Nix and Carey's bottled water claims from 2019 and 2020 to present, and all of Plaintiff Burris' bottled water claims. [D.E. 551 at 21-22]; [D.E. 614 at 10-13].

## II. Alternatively, the Classes Should be Decertified.

If the Court does not grant summary judgment in Defendants' favor, the classes should be decertified to allow individual class members to attempt to prove their own claims individually if they choose to do so, unburdened by the limitations of the class representatives. The same reasons supporting the entry of summary judgment in Defendants' favor demonstrate how the class representatives are inadequate and atypical. Further, after the Court's *Daubert* rulings, it is clearer than ever that Plaintiffs cannot prove causation and injury and damages on a classwide basis through common evidence. As such, Plaintiffs cannot demonstrate typicality or predominance.

### A. The Undisputed Record Continues to Demonstrate That the Class Representatives are Inadequate and Atypical.

It is axiomatic that a class representative cannot represent a class seeking damages that the class representative himself cannot recover. *E. Texas Motor Freight Sys. Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members."). The Court's certification order noted that typicality was present because the proposed representatives alleged similar underlying injury: quantifiable PFAS exposure in their water systems. [D.E. 420 at 55]. But when combining the lack of exposure data outlined in Section I.A with the uncontroverted facts outlined in Defendants' prior briefing demonstrating that each of the class representatives has either moved out of the class area or now receives public water which tests below MCLs, Plaintiffs plainly fail to demonstrate any "quantifiable PFAS exposure in [their] water system[s]." [*Id.*]; [D.E. 551 at 15-17]; [D.E. 630 at 13-14]. And while Defendants may or may not agree that Mr. Nix or Ms. Carey may still have

7

a claim for the costs of bottled water, [D.E. 551 at 14-18], it is undisputed that they cannot as a matter of law recover the primary claims sought by the class they purport to represent: replacement of water heaters and the installation of filtration systems. *See supra* Section I.A. As such, Plaintiffs remain inadequate and atypical class members and unfit to serve as class representatives.

**B.** **This Court's *Daubert* Rulings and the Sampling Data Demonstrate That the Public Utility Class Cannot Prove Exposure to FW PFAS Using Common Evidence.**

Even more fundamentally, it is apparent that Plaintiffs are unable to demonstrate classwide answers to classwide questions. [D.E. 630 at 15-18]. At class certification, the Court credited the reports of Mr. Duncklee, Mr. Gidlow, and Ms. Albright for avenues of common causation [D.E. 420 at 43]. But as demonstrated, none of these experts, or any other of Plaintiffs' experts, provide viable classwide proof of FW PFAS exposure, let alone classwide proof of exposure sufficient to cause compensable property injury and damages.[4] Plaintiffs have not denied any of the undisputed facts, but again rely on their experts to shore up the evidentiary gap. Again, particularly in the wake of this Court's *Daubert* rulings, those experts fall woefully short:

- **Mr. Roger Griffith** is permitted to opine that *if* there is PFAS in water heater sediment it will be released and reintroduced into the home's plumbing and tap water and that there is no methodology available to completely remove all sediment from a water heater. [D.E. 649 at 42]. However, critically, Mr. Griffith's "[r]eports and testimony would not form a sufficient basis for testimony regarding plaintiffs' alleged PFAS exposure or alleged potential future health risks." [*Id.* at 43]. As such, Mr. Griffith may not opine that everyone

---

[4] While Plaintiffs also lack viable classwide proof of FW PFAS exposure to the groundwater class, by definition, members of the groundwater class have some "quantifiable" concentration of FW PFAS in their groundwater. [D.E. 334-1; 23-24].

in the class *actually has* PFAS in their water heater sediment or plumbing. The uncontroverted sampling results demonstrate that they do not.

- **Dr. Kimberly Gray** opines that *if* there is PFAS circulating in a property's drinking water, it will bind to bacteria, organic material, nutrients, and minerals in pipes and thus re-circulate into drinking water. [D.E. 632 at 21]. Dr. Gray does not opine whether there actually is PFAS in the class's drinking water or water heaters. Again, the uncontroverted sampling results belie any such conclusion.

- **Mr. David Duncklee** offers no classwide opinion on PFAS contamination. Mr. Duncklee merely opines that air deposition of FW PFAS has contaminated the Cape Fear River and that he conducted groundwater tests at six properties "to determine whether area samples comported with his conclusions concerning the scope and extent of defendants' alleged PFAS contamination of the Cape Fear River." [D.E. 649 at 33]. "Dunklee, however, does not include the test results from the six residential properties as evidence of classwide contamination or make claims about the contamination on a classwide basis." *Id.* "Duncklee's data would not form a sufficient basis for testimony regarding speculative future damages or classwide PFAS contamination." *Id.*

- **Mr. Brien Gidlow** opines that FW PFAS from the Cape Fear River will reach every drinking water retail connection served by the water treatment plants that deliver water from the Cape Fear River. [D.E. 632 at 19]. While he may opine that some theoretical amount of FW PFAS will reach every retail connection, he has no opinion on: the actual amounts of FW PFAS in the class's drinking water (critical to showing damage, *see infra* section II.C), whether the FW PFAS will reach the water heaters of all class members, or

9

whether the FW PFAS will adsorb to the water heaters of all class members or be recirculated into the taps of all class members.

- **Ms. Ruth Albright** provides a total emissions estimate for Fayetteville Works. [D.E. 674 at 15-16]. But critically, "Albright modeled emissions, not deposition[.]" *Id.* Further, Plaintiffs offer Albright's report on fate and transport, not the class members' exposure levels. *See* [D.E. 566 at 8] ("Plaintiffs retained Ms. Albright to opine on . . . the fate and transport of PFAS"). As such, while Ms. Albright may opine that PFAS found generally in the area could be traced to Fayetteville Works, Ms. Albright cannot opine on PFAS levels on any particular property.

- **Dr. Robert Michaels** opines on acceptable treatment methods for well-water properties. [D.E. 649 at 44]. But Plaintiffs do not purport to offer Dr. Michaels to opine: (1) That the entire class is continually being exposed to PFAS; (2) that the entire class should receive a water treatment system; or (3) that the entire class needs replacement water heaters. [D.E. 610 at 3-4]. The Plaintiffs are bound to their word. [D.E. 649 at 46].

Even before this Court's recent *Daubert* rulings, Plaintiffs' other experts—Richard DeGrandchamp, Jamie DeWitt, Bruce Gamble, Robin Smith, and David Savitz—presented no opinions that could even potentially relate to proof of common injury and damages. [D.E. 649 at 61 (stating that Dr. DeGrandchamp was retained to answer the questions whether Defendants complied with applicable standards of care and what amounts of PFAS in drinking water can be considered safe)]; [*Id.* at 35 (stating that Dr. DeWitt was retained to "assess the toxicological risks (if any) of exposing humans to [PFAS].")]; [*Id.* at 26–28 (stating that Mr. Gamble "is not an expert on engineering or contamination[,]" and "testif[ies] on the aggregate cost of remediating damages")]; [*Id.* at 58 (stating that Smith may opine on the standard of care established by laws

10

and regulations but lacks scientific or technological expertise "to opine as to causation, mitigation, defendants' specific alleged PFAS contamination, or whether defendants' actions concerning their alleged PFAS contamination breached the standard of care.")]; [D.E. 420 at 60 (stating that Dr. Savitz outlines the process for carrying out a proposed epidemiological study)].

### C. The Promulgation of Binding MCLs and this Court's *Daubert* Rulings Confirm That Classes Cannot Prove Injury and Damage Using Common Evidence.

The enactment of binding MCLs, combined with this Court's *Daubert* rulings, confirms that even if there was some evidence of exposure, the classes cannot prove injury and damage using common evidence, and the classes fail the typicality and predominance requirements of Fed. R. Civ. P. 23. Defendants argued at the class certification stage that contamination below levels sanctioned by regulatory agencies could not constitute an injury as a matter of law. [D.E. 342 at 24 (citing *In re Wildewood Litig.*, 52 F.3d 499, 503 (4th Cir. 1995) and *Brooks v. E.I. duPont de Nemours & Co.*, 944 F. Supp. 448, 449 (E.D.N.C. 1996))]. Defendants argued Plaintiffs could not prove damage and injury on a classwide basis without first sampling each property to determine whether the FW PFAS measured on that property is governed by and exceeds the established regulatory limit. *Id.* Mindful that this Court distinguished those authorities prior to the issuance of MCLs as concerning chemicals "that government agencies had studied and regulated," [D.E. 420 at 49], Defendants renewed this argument in the wake of the EPA's 2024 promulgation of binding MCLs for several FW PFAS, including GenX. [D.E. 630 at 16-21].

This remains true. Defendants previously submitted supplemental briefing to notify the Court of EPA's intention to retract various MCLs established by the April 2024 PFAS drinking water rule. [D.E. 647]. In May 2025, EPA announced via press release its intention to "rescind the regulations and reconsider the regulatory determinations for PFHxS, PFNA, [GenX], and the

Hazard Index . . ." *EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS*, EPA, https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos (May 14, 2025). EPA has separately been in litigation surrounding the viability of the PFAS drinking water rule. *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir.). On September 11, 2025, EPA filed a motion in *American Water Works* for partial vacatur of the drinking water rule as it relates to MCLs for PFHxS, PFNA, GenX, and the Hazard Index. *Id.* at Dkt. No. 2134523. The D.C. Circuit denied that motion in January 2026 and required the case to move to final briefing. *Id.* at Dkt. No. 2155270. On March 6, 2026, EPA filed their final brief which wholeheartedly defends the entirety of the PFAS drinking water rule, including the MCLs for PFHxS, PFNA, GenX, and the Hazard Index. *Id.* at Dkt. No. 2162593. On the same day as filing the final brief, EPA filed a separate notice indicating they do not defend the portions of the final brief defending the non-PFOA/PFOS MCLs and reiterated their intention to begin a rulemaking process to amend the rule and remove the non-PFOA/PFOS MCLs. *Id.* at Dkt. No. 2162596.

While the EPA is certainly providing mixed messaging on the future of MCLs for PFHxS, PFNA, GenX, and the hazard index, as of today, the MCLs are the law of the land—there is no notice in the federal register regarding a proposed rule and no court has vacated the MCLs. As such, *Brooks* and *Wildewood* compel decertification because the critical question of whether a class member is injured or damaged can only be answered by knowing (1) what types of PFAS are present on a given property, (2) in what amount, and (3) whether that compound is regulated or unregulated. As demonstrated above, such evidence is not available classwide from expert testimony. And as set forth in Defendants' Motion for Decertification, the limited sampling data available indicate a wide variance in both levels and types of FW PFAS measured on different

12

class properties, variances that will be dispositive in determining whether a given class member can assert a prima facie damages claim.

But even if the Court were to disregard the MCLs, Plaintiffs can still produce no classwide evidence of the level at which any particular FW PFAS causes harm. Plaintiffs proffered two experts on this topic—Dr. DeWitt and Dr. DeGrandchamp. Both experts opined there was no safe level of PFAS, but the Court excluded their opinions entirely. [D.E. 649 at 40, 61-62]. As such, "the jury may only speculate about the level of PFAS exposure that may (or may not) cause negative health effects." *Id.* at 62. Plaintiffs can produce no common proof of how this Court may measure injury, i.e., the level of PFAS exposure which causes harm, and decertification is proper. And because the classes' entire theory of property damages is premised on the need to replace water heaters or filter water due to the allegedly unacceptable health risks of FW PFAS, the house of cards collapses in the absence of any classwide evidence that FW PFAS on each property creates such an unacceptable health risk.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Partial Motion for Summary Judgment and/or grant Defendants' Motion for Decertification.

Respectfully submitted, this the 15th day of May, 2026.

/s/ Thomas H. Segars
Thomas H. Segars
N.C. State Bar No. 29433
Scottie Forbes Lee
N.C. State Bar No. 50833
ELLIS & WINTERS LLP
P.O. Box 33550
Raleigh, NC 27636
Phone: 919-865-7000
Facsimile: 919-865-7010
tom.segars@elliswinters.com

13

scottie.lee@elliswinters.com

Kenneth J. Reilly
*Specially Appearing Under Local Civil Rule 83.1(e)*
SHOOK, HARDY & BACON, L.L.P.
201 S. Biscayne Blvd.
3200 Miami Center
Miami, FL 33131
Phone: 305-960-6907
Facsimile: 305-385-7470
kreilly@shb.com

Britta N. Todd
Andrew D. Carpenter
*Specially Appearing Under Local Civil Rule 83.1(e)*
SHOOK, HARDY AND BACON, L.L.P.
2555 Grand Blvd.
Kansas City, MO 64108
Phone: 816-559-2487
Facsimile: 816-421-5547
btodd@shb.com
acarpenter@shb.com

*Attorneys for Defendants*

14